AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

 ☑ Original ☐ □

CLERK'S OFFICE
A TRUE COPY
Dec 01, 2023
s/ JDU

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of:                                    )
*(Briefly describe the property to be searched*       )
*or identify the person by name and address)*         )     Case No.  23-M-481 (SCD)
The Use of a Cell-Site Simulator to Identify the     )
Cellular Device Used by Fernando Palma               )
Jimenez                                              )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ____12-15-23____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Honorable Stephen C. Dries____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of ____05/29/2024____ .

Date and time issued:  ____12-1-23 12:10 pm____                    *Stephen C. Dries*
                                                                   *Judge's signature*

City and state:  ____Milwaukee, WI____                    Stephen C. Dries, United States Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Fernando PALMA JIMENEZ is present at certain locations, including, but not limited to:

3901 W. Rohr Avenue, Milwaukee, WI

3607 W. Bratling Lane, Milwaukee, WI

**ATTACHMENT B**

The "Target Cellular Device" is the cellular device or devices carried by Fernando PALMA JIMENEZ. Pursuant to an investigation of Fernando PALMA JIMENEZ for violations of Title 21, United States Code, Sections 841(a)(1) and 846, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices.  Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Dec 01, 2023
s/ JDU
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of: )
)
)
The Use of a Cell-Site Simulator to Identify the )
Cellular Device Used by Fernando Palma Jimenez )
)

Case No.   23-M-481 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Distribution and possession with intent to distribute controlled substances; Conspiracy to distribute distribute controlled substances |

The application is based on these facts:

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order.  Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by HSI and DEA.  See 18 U.S.C. §§ 3122(b), 3123(b).

☐ Continued on the attached sheet.

☑ Delayed notice of ___180___ days *(give exact ending date if more than 30 days:*  ___05/29/2024___  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ELIZABETH MONFILS   Digitally signed by ELIZABETH MONFILS
Date: 2023.11.30 15:56:39 -06'00'

*Applicant's signature*

Elizabeth M. Monfils, Assistant United States Attorney

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date:  12-1-23

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Todd Higgins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by Fernando PALMA JIMENEZ (the "**Target Cellular Device**"), described in Attachment A.

2.      I am a Special Agent/Task Force Officer with the DEA and have been so since January 2018.  I am currently a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation and I have approximately 23 years of law enforcement experience.  I have specialized training and experience in narcotics smuggling and distribution investigations. During my law enforcement career, I have participated in numerous narcotics investigations and have authored numerous affidavits supporting criminal complaints and search and seizure warrants. I have debriefed multiple defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with narcotics traffickers' methods of operation including communications via Facebook messenger, cellular telephone/smart phone applications, text messaging services, and other traditional forms of communications.

3.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.  More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.   I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.   I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.   I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.   I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry.  I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.   This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the **Target Cellular Device** is currently believed to be located inside this district because Fernando PALMA JIMENEZ is believed to reside in the Eastern District of Wisconsin ("EDWI").  On numerous occasions within the last couple of months, Fernando PALMA JIMENEZ has been spotted by case agents, via physical and electronic surveillance, in the EDWI.  Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

6.   Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have

been committed, are being committed, and will be committed by Fernando PALMA JIMENEZ, and others not yet identified. There is also probable cause to believe that the identity of the **Target Cellular Device** will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the **Target Cellular Device**, its user, and the criminal violations under investigation, law enforcement must first identify the **Target Cellular Device**. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. The United States, including HSI and the DEA, is conducting a criminal investigation of Fernando PALMA JIMENEZ (a/k/a "Negrito," "Chapo," "Chapito," "Negro," and "Patillas"), Julio MELENDREZ ORTEGA, Jesus LOZANO VILLARREAL, Jesus PEREZ ROMAN, Mario VELAZQUEZ HERNANDEZ, and others regarding possible violations of Title 21, United States Code, Sections 846 and 841(a)(1).

9. In March 2023, HSI Milwaukee, and members of North Central High Intensity Drug Trafficking Area (HIDTA) DEA Group 63 and Group 68, initiated an investigation into drug trafficking activities of Fernando Israel PALMA JIMENEZ. A

Confidential Informant (hereinafter CI-1) notified investigators about a large drug trafficking organization affiliated with Sinaloa, Mexico Money Laundering/Drug Trafficking Organization (MLDTO) (hereinafter Sinaloa MLDTO) being operated in Milwaukee, WI. CI-1 indicated Fernando PALMA JIMENEZ operates a body shop on the north side of Milwaukee and has been involved in drug trafficking for approximately 20 years. CI-1 stated the Milwaukee-based MLDTO receives 30-50 kilograms of narcotics, which are transported by vehicle from Arizona, on a monthly and sometimes bi-monthly basis. CI-1 stated the narcotics are concealed in after-market compartments within the "load vehicles" and driven to the body shop operated by PALMA JIMENEZ. CI-1 provided cellular telephone number (414) 326-6333 for PALMA JIMENEZ.

### June 24, 2023, Narcotics Seizure in Milwaukee, Wisconsin

10.     On June 24, 2023, HSI in Milwaukee received information that a white Ford F-450 bearing Illinois registration 145423C (hereinafter Subject Vehicle 1), had traveled through the interior of the United States and was located in the area of 5890 South Howell Avenue, Milwaukee, Wisconsin, which was determined to be the Hilton Garden Inn Hotel. Based upon the investigation, Subject Vehicle 1 was suspected of containing an unknown amount and type of narcotics. HSI Milwaukee special agents located Subject Vehicle 1 that same day at the parking lot of the Hilton Garden Inn at approximately 6:45 a.m.

11.     On June 24, 2023, at approximately 8:30 a.m., a Milwaukee Police Department Officer used a drug detection canine, "Flexy," who alerted to the presence of narcotics at the front passenger door area of Subject Vehicle 1.

12.     At approximately 12:50 p.m., HSI agents observed an individual enter Subject Vehicle 1.  Agents encountered the subject, hereinafter "Cooperating Source-1" (CS-1), who stated in an audio-recorded post *Miranda* interview that Subject Vehicle 1 contained concealed narcotics.  CS-1 provided agents verbal and written consent to search Subject Vehicle 1, which resulted in the seizure of approximately 26 individually wrapped brick-sized objects, from a spare fuel tank in the front of the truck bed. Approximately 24 "bricks" were wrapped in brown packaging, while approximately 2 "bricks" were wrapped in aluminum packaging.  Samples of the narcotics were field tested, which returned positive for the presence of fentanyl and cocaine.  The narcotics in total weighed approximately 30 kilograms.

13.     CS-1 further stated CS-1 was instructed to meet unknown individuals in the morning of June 25, 2023.  CS-1 was instructed to leave the keys in the vehicle and two, unidentified Hispanic males would take the vehicle to an unknown location and remove the narcotics.  CS-1 was not aware of where Subject Vehicle 1 was to be taken to offload the narcotics.

14.     CS-1 provided information to law enforcement agents beginning on June 24, 2023.  The information CS-1 provided is substantially against CS-1's personal interest. The information provided by CS-1 has also been corroborated by agents through a consent search, surveillance, the seizure of physical evidence, and review of WhatsApp text conversation between CS-1 and an Arizona-based coordinator only identified as "Luis."  CS-1 does not have a prior criminal history.  CS-1 is cooperating in exchange for consideration relating to the seizure of approximately 30 kilograms of suspected

fentanyl/cocaine mixture on June 24, 2023. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-1 is credible and CS-1's information reliable.

15.     In the early morning hours of June 25, 2023, law enforcement agents set up surveillance of the meet location between CS-1 and the unknown males that planned to obtain Subject Vehicle 1.

16.     On June 25, 2023, at approximately 7:43 a.m., CS-1 received a WhatsApp message from "Luis," which was an image of a map location, asking CS-1 how long until CS-1 would arrive. The location was a McDonald's in Milwaukee.

17.     On June 25, 2023, at approximately 8:20 a.m., Subject Vehicle 1 arrived at the McDonald's located at 617 W. Oklahoma Avenue in Milwaukee, Wisconsin. At approximately 8:22 a.m., a Hispanic male, later identified as Julio MELENDREZ ORTEGA entered Subject Vehicle 1 and departed the area. A silver Jeep (hereinafter Subject Vehicle 2) followed Subject Vehicle 1 to the detached garage in the alley between South 8th and South 9th Streets, located at 3033 S. 8th Street in Milwaukee, Wisconsin. Based on case agents' training and experience, case agents are aware drug traffickers and transporters often use additional vehicles to follow the narcotics-laden vehicle to provide counter-surveillance of law enforcement and/or to facilitate the movement of narcotics.

18.     A short time later, or at approximately 8:24 a.m., MELENDREZ ORTEGA backed Subject Vehicle 1 in the garage located at 3033 South 8th Street, and the garage door of this residence remained open. Subject Vehicle 2 parked in the alley in front of a garage that is next to the detached garage for the 8th Street residence. Additionally, a

Chevrolet Silverado (hereinafter Subject Vehicle 3) arrived at the residence and was believed to have deliberately parked in front of Subject Vehicle 1 in the garage. At approximately 8:30 a.m., law enforcement approached the garage towards the open roll-up door of the 8th Street residence and encountered MELENDREZ ORTEGA, and three other individuals later identified as, Mario VELAZQUEZ HERNANDEZ, Jesus LOZANO VILLARREAL, and Jesus PEREZ ROMAN, who were all subsequently placed in custody.

19. On June 25, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge of the Eastern District of Wisconsin, authorized a search warrant for the residence and detached garage, and Subject Vehicles 2, 3, and 4 (Subject Vehicle 4 was identified as a Honda Odyssey driven that morning by VELAZQUEZ HERNANDEZ). S*ee* 23-M-407 (SCD). During the execution of this warrant, law enforcement located a backpack in the detached garage that contained at least 23 bundles of U.S. currency totaling $459,600. The bundles were wrapped in brown packaging and were also marked with one to four "x"'s on the outside. Based on their training and experience, and familiarity with this investigation, case agents believe that the bulk U.S. currency located in the backpack in the detached garage constitutes drug proceeds.

20. On June 30, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge, authorized a search warrant for eight cellular phones seized from Julio MELENDREZ ORTEGA, Mario VELAZQUEZ HERNANDEZ, Jesus LOZANO VILLARREAL, and Jesus PEREZ ROMAN. *See* 23-M-415 (SCD).

21.     A subsequent review of telephonic contacts between (414) 326-6333 (used by PALMA JIMENEZ) and the phones seized from PEREZ ROMAN revealed approximately 157 contacts between May 1, 2023, and June 25, 2023, including 106 contacts between June 24, 2023, and June 25, 2023. Additionally, since June 25, 2023, case agents have observed PALMA JIMENEZ operating Subject Vehicle 2 on multiple occasions at the auto body shop.

22.     In July 2023, CI-1 informed case agents that CI-1 had recently been with PALMA JIMENEZ before the June 25, 2023, event.  CI-1 said PALMA JIMENEZ was accompanied by an individual described as being from the Sinaloa Cartel.  CI-1 was shown several photographs and identified Jesus PEREZ ROMAN as the subject who accompanied PALMA JIMENEZ. At the time, CI-1 was not aware that HSI Milwaukee was responsible for the June 25, 2023 arrest of PEREZ ROMAN and the other subjects.

23.     In July 2023, CI-1 informed case agents that CI-1 was with PALMA JIMENEZ when he received a phone call from someone in Mexico who told PALMA JIMENEZ that the subjects were arrested and instructed PALMA JIMENEZ to go to a stash house in Milwaukee and remove a large amount of money and several kilograms of heroin.  According to CI-1, PALMA JIMENEZ retrieved several kilograms of narcotics and $100,000 in bulk cash from the stash house.  CI-1 stated that PALMA JIMENEZ was also instructed to retrieve $60,000 from Subject Vehicle 2, previously identified as being driven by Jesus PEREZ ROMAN, which was concealed in an after-market compartment. CI-1 further stated PALMA JIMENEZ was instructed to re-register Subject Vehicle 2 and maintain control of the vehicle, which agents have seen traveling to and from PALMA's

body shop business, as noted above. According to CI-1, the individual from Mexico who called PALMA JIMENEZ told him (PALMA JIMENEZ) that he was to take over drug trafficking activities in Milwaukee.

**Controlled Purchase of Fentanyl from Fernando PALMA JIMENEZ**

24.     Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant also uses covert recording and monitoring devices. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. Additionally, telephone calls made by the informant while under the direction and control of case agents are recorded.

25.     On July 25, 2023, CI-1 contacted (414) 326-6333, used by Fernando PALMA JIMENEZ, and began negotiating the price for 100 grams of heroin.[1] PALMA JIMENEZ and CI-1 negotiated the final price at $5,000. PALMA JIMENEZ agreed that CI-1 would pay $4,000 at the initial transaction, which would take place the following day at PALMA

---

[1] All conversations between CI-1 and PALMA JIMENEZ occurred in Spanish and have been translated to English.

JIMENEZ's autobody shop, located at 3901 W. Rohr Avenue, Milwaukee, Wisconsin, and the last payment of $1,000 to be paid at a later date.

26.     On July 26, 2023, CI-1 placed a recorded call to PALMA JIMENEZ at (414) 326-6333. PALMA JIMENEZ answered the call and CI asked if PALMA JIMENEZ was at the garage. CI-1 then advised PALMA JIMENEZ that CI-1 would be arriving in about 15 minutes and, "to have that ready." Case agents understand CI-1 to have advised PALMA JIMENEZ to have the heroin ready upon CI-1's arrival ("to have that ready").

27.     Case agents established surveillance near PALMA JIMENEZ's place of business, located at 3901 W. Rohr Avenue, Milwaukee. Investigators observed CI-1's vehicle pulled up to the west gate of the body shop. A short time later, investigators observed a dark color Chevrolet SUV, bearing Wisconsin registration plate 671MAZ pull out of the auto body shop. The Chevrolet then stopped outside the overhead garage door and investigators observed PALMA JIMEMEZ exit the driver's side of the vehicle. PALMA JIMENEZ, wearing a tan shirt and tan shorts, was observed walking to the west gate. Investigators then observed PALMA JIMENEZ open the west gate, allowing CI-1 to pull CI-1's vehicle into the gated lot. PALMA JIMENEZ closed the gate and walked back into the garage. CI-1 exited the vehicle and entered the garage.

28.     After the controlled buy, CI-1 was followed to a pre-determined meet location. Upon arrival, CI-1 provided investigators with approximately 102.05 grams of a white substance, which later field tested positive for fentanyl.

29.     During a debriefing after the controlled purchase, CI-1 stated that during the controlled buy, PALMA JIMENEZ walked to a vehicle that was covered with a tarp,

opened the trunk of a red Volkswagen Jetta, and pulled out what appeared to be one-half of a kilogram of narcotics from the trunk of the car. PALMA JIMMINEZ then broke off a chunk of suspected heroin from the one-half kilogram with a knife, measured it on a scale and wrapped it in plastic Reynolds wrap. PALMA JIMENEZ handed the suspected heroin to the CI, and the CI handed the $4,000 to PALMA JIMENEZ. During that time, CI-1 observed approximately 3 additional kilograms of narcotics in the trunk of the Jetta with a Bugatti car logo on them.

30.     On August 18, 2023, CI-1 attempted to place a recorded call into Fernando PALMA JIMENEZ at (414) 326-6333. The call went to voicemail. CI-1 attempted to place a second recorded call to PALMA JIMENEZ, however that call also went to voicemail. A couple minutes later PALMA JIMENEZ, using (414) 326-6333, returned CI-1's call and asked in Spanish, "What's up?" CI-1 asked, "Are you already at the garage?" Case agents are aware that the garage is PALMA JIMENEZ's autobody shop at 3901 W. Rohr Avenue, Milwaukee, Wisconsin. PALMA JIMENEZ replied "Yes, Guey." The Spanish translation for "Guey" is Dude. CI-1 said, "I'm here with my buddy. He settled with what was pending." PALMA JIMENEZ asked, "With what?" CI-1 replied, "He fixed what was pending, Guey." PALMA JIMENEZ then stated, "Ok, then." CI-1 replied, I'm here, I'll see you there."

31.     Case agents observed CI-1 pulling up to the west gate of the body shop. CI-1 attempted to call PALMA JIMENEZ at (414) 326-6333 to inform him that CI-1 arrived at the location; however, the call went to voice mail. CI-1 called PALMA JIMENEZ at the (414) 326-6333 a second time, and PALMA JIMENEZ answered the call. CI-1 told PALMA

JIMENEZ that CI-1 arrived and PALMA JIMENEZ then stated that he was on his way. PALMA JIMENEZ was then observed exiting the garage and opening the west gate for CI-1, allowing CI-1 to pull into the gated lot. PALMA JIMENEZ closed the gate and walked back into the garage. At approximately 10:41 a.m., CI-1 exited the vehicle and entered the garage.

32.    At approximately 10:53 a.m., CI-1 exited the garage and entered CI-1's vehicle. PALMA JIMENEZ was observed walking to the gate. Shortly thereafter, CI-1 drove away. PALMA JIMENEZ was then observed walking back to the garage.

33.    CI-1 stated that when CI-1 was inside of the garage, CI-1 handed $1,000 to PALMA JIMENEZ. Case agents know that this $1,000 payment from CI-1 to PALMA JIMENEZ was for the narcotics supplied by PALMA JIMENEZ to CI-1 on July 26, 2023.

**Monitoring of (414) 326-6333 (Used by PALMA-JIMENEZ)**

34.    On August 24, 2023, the Honorable William E. Duffin authorized a search warrant for the information about the location of cellular telephone (414) 326-6333. *See* 23-MJ-157. Monitoring of location data for (414) 326-6333 was authorized for 30 days.

35.    On September 22, 2023, the Honorable William E. Duffin authorized an extension of the search warrant for the information about the location of cellular telephone (414) 326-6333, which monitoring was authorized for an additional 30 days. See 23-MJ-157 1st Ext.

36.    On October 20, 2023, the Honorable William E. Duffin authorized an extension of the search warrant for the information about the location of cellular

telephone (414) 326-6333, which monitoring was authorized for an additional 30 days. See 23-MJ-157 2nd Ext.

37.     On September 6, 2023, investigators conducted electronic surveillance at PALMA JIMENEZ's shop, located at 3901 W. Rohr Avenue, Milwaukee, Wisconsin. At approximately 11:41 a.m., investigators observed a black Audi traveling westbound on W. Rohr Avenue, from N. 39th Street. The Audi parked at the north gate of the shop. At approximately 11:50 a.m., PALMA JIMENEZ was observed operating a silver Jeep Liberty, which pulled up to the west gate of 3901 W. Rohr Avenue. The Audi made a U-turn and stopped directly behind the silver Jeep. PALMA JIMENEZ then exited the silver Jeep, unlocked the gate, and pulled the Jeep into the driveway of the shop. The Audi drove into the gated shop area, while PALMA JIMENEZ closed and locked the gate. Both vehicles were then observed driving to the rear of the shop, out of investigators' view. Investigators further monitored the location data of cellular telephone (414) 326-6333 and noted that at approximately 12:00 p.m. (Central Standard Time) location data showed cellular telephone (414) 326-6333  in the area of the shop (3901 W. Rohr Ave.), with a radius of approximately 331 meters. At approximately 12:07 p.m., investigators observed PALMA JIMENEZ walk down the driveway of the shop. PALMA JIMENEZ then unlocked the gate, at which time the Audi and its occupant(s) exited and drove from the area. PALMA JIMENEZ re-locked the gate and walked back to the shop area.

38.     On September 12, 2023, investigators conducted electronic surveillance at PALMA JIMENEZ's shop, located at 3901 W. Rohr Avenue. At approximately 6:33 p.m., a silver 4 door car, traveling westbound on W. Rohr Avenue, parked in front of the west

gate of 3901 W. Rohr Avenue. An unknown male exited the vehicle and walked to the gate where he was observed communicating with PALMA JIMENEZ, who was standing on the other side of the gate. At approximately 6:46 p.m., the unknown male returned to his vehicle, entered the driver's seat, and drove from the area. PALMA JIMENEZ then returned to the shop. Investigators further monitored location data for the cellular telephone (414) 326-6333 and noted that at approximately 6:28 p.m. (Central Standard Time) location data showed that device in the area of the shop (3901 W. Rohr Ave.), with a radius of approximately 182 meters.

39.     Based on their training, experience, and familiarity with this investigation, case agents believe that the above-described short-term contacts are consistent with the manner in which drug transactions occur. Based upon the location information that reflects PALMA JIMENEZ in the vicinity of the shop during these short-term contacts, as well as the controlled purchases of narcotics from PALMA JIMENEZ (as described above and below), case agents further believe that PALMA JIMENEZ is using his autobody shop to facilitate his drug trafficking activities.

40.     On September 11, 2023, CI-1 met with case agents and informed agents that CI-1 met with PALMA JIMENEZ over the weekend and that PALMA JIMENEZ agreed to sell CI-1 heroin for $50 a gram. CI-1 indicated that PALMA JIMENEZ told CI he has been providing "samples" of heroin to potential kilogram-level heroin dealers and that PALMA JIMENEZ believed one of the dealers may be interested in purchasing one kilogram of heroin. When CI-1 met with case agents, case agents instructed CI-1 to arrange a 150-gram purchase of heroin for $7,500 from PALMA JIMENEZ. Later that day,

CI-1 informed case agents that PALMA JIMENEZ agreed to the purchase price of $7,500. PALMA JIMENEZ and CI-1 agreed to meet on September 14, 2023, at PALMA JIMENEZ's auto body shop, located at 3901 W. Rohr Avenue in Milwaukee, Wisconsin.

41.     On September 14, 2023, CI-1 called case agents to inform them that PALMA JIMENEZ wanted CI-1 to pick him up at his residence (3622 W. Branting Lane, Milwaukee, Wisconsin) and take him to the autobody shop to conduct the drug transaction. Case agents instructed CI-1 to meet with case agents at a pre-determined location after he dropped off PALMA JIMENEZ at the autobody shop.

42.     At 1:29 p.m., case agents observed CI-1 pull up to the gate of the autobody shop. PALMA JIMENEZ was observed exiting the front passenger side of CI-1's vehicle. PALMA JIMENEZ walked to the gate, unlocked it, entered the gated lot, locked the gate, and walked to the autobody shop.  CI-1 was observed driving off.

43.     At 1:56 p.m., CI-1 met with case agents at a pre-determined location. Case agent provided CI-1 with $7,500 in pre-recorded buy money and an audio/video recording device. Case agents followed CI-1 to PALMA JIMENEZ's autobody shop. Case agents established surveillance near PALMA JIMENEZ's place of business, located at 3901 W. Rohr Avenue, Milwaukee. Investigators observed CI-1's vehicle pull up to the west gate of the body shop. At 2:14 p.m., C1-1 called cellular telephone (414) 326-6333 to inform PALMA JIMENEZ to open the gate.

44.     At 2:15 p.m., PALMA JIMEMEZ exited the service door of the garage, walked to the gate, opened the gate, and allowed CI-1 to pull into the gated lot. PALMA

JIMENEZ closed the gate and walked back to the garage. CI-1 exited the vehicle and entered the service garage door with PALMA JIMENEZ.

45.    At 2:22 p.m., CI-1 and PALMA JIMENEZ exited the service door of the garage. CI-1 entered the driver side of the vehicle while PALMA JIMENEZ was observed entering the front passenger side door. CI-1 drove to the gate and PALMA JIMENEZ exited the passenger side of the vehicle. PALMA JIMENEZ walked to the gate, unlocked it, and the CI drove off. PALMA JIMENEZ was then observed walking back to the garage.

46.    After the controlled buy, CI-1 was followed to a pre-determined meet location. Upon arrival, CI-1 provided investigators with approximately 164.74 grams of a white substance, which later field tested positive for fentanyl.

47.    During a debriefing after the controlled purchase, CI-1 stated PALMA JIMENEZ handed CI-1 a box that contained car parts and heroin. CI-1 opened the box, removed the heroin and placed it inside a white grocery bag. CI-1 then handed $7,500 to PALMA JIMENEZ.

48.    On October 11, 2023, investigators conducted electronic surveillance at PALMA-JIMENEZ's autobody shop located at 3901 W. Rohr Avenue. At approximately 5:53 p.m., investigators observed a white Chevrolet work van, along with a white Volkswagen Golf, traveling westbound on W. Rohr Avenue. The vehicles subsequently parked in front of the west gate of 3901 W. Rohr Avenue. Investigators observed PALMA JIMENEZ on foot, approaching the gate from inside of the fenced in area. PALMA JIMENEZ then unlocked the gate, at which time both vehicles entered the gated area. PALMA JIMENEZ closed and locked the gate and traveled on foot to the rear of the

building. At 6:10 p.m., investigators observed an orange SUV park on the north side of W. Rohr Avenue, in the vicinity of the west gate. At approximately 6:24 p.m., PALMA JIMENEZ unlocked and opened the west gate. Investigators observed an unknown black male approach PALMA JIMENEZ. The unknown black male was observed carrying a medium size tote bag, which the black male handed to PALMA JIMENEZ. Investigators then observed the previously observed Volkswagen exit out of the west gate towards W. Rohr Avenue. During that time, an unidentified female approached PALMA JIMENEZ and the black male, who were still situated outside of the west gate. Two unidentified Hispanic males were then observed entering the front passenger seat of the Volkswagen. The Volkswagen then drove from the area, east bound on W. Rohr Avenue. The unidentified female returned to an orange SUV and drove the vehicle through the west gate, while PALMA JIMENEZ and the black male walked into the gated area, out of view of surveillance equipment. At approximately 6:50 p.m., investigators observed PALMA JIMENEZ open/unlock the west gate, at which time the orange SUV exited out of the gated area and drove from that location.

49.     On October 17, 2023, CI-1 called case agents to inform them that CI-1 and PALMA JIMENEZ talked over the weekend over cellular telephone (414) 326-6333. CI-1 told PALMA JIMENEZ that CI-1 has a customer who is inquiring about purchasing a kilogram of cocaine. CI-1 asked PALMA JIMENEZ if he had any cocaine available, and PALMA JIMENEZ told CI-1 that he no longer had any. CI-1 believed PALMA JIMENEZ distributed all the narcotics he had received. In light of CI-1's information and case agents' familiarity of this investigation, the activities that case agents observed at PALMA

JIMENEZ's autobody shop on October 11, 2023 over electronic surveillance, as described above, lead case agents to believe that PALMA JIMENEZ received a shipment of narcotics at his autobody shop on that day, and that all of the cocaine received was already sold and/or earmarked for other customers.

50. On October 18, 2023, at approximately 12:47 p.m., CI-1 called case agents to inform them that CI-1 called PALMA JIMENEZ at (414) 326-6333, at which time PALMA JIMENEZ told CI-1 that he was "receiving a truck." Case agents believed that to mean that PALMA JIMENEZ was expecting a truck with narcotics.

51. Investigators conducted electronic surveillance at PALMA JIMENEZ's autobody shop, located at 3901 W. Rohr Avenue. At approximately 12:29 p.m., case agents observed a 2011 Ford Escape Sport utility silver truck with Wisconsin registration plate APS1985, listing to Mohamed TOURE, pull up to the south end of the gate. A photo check with the Department of Transportation of TOURE revealed the person in the Ford Escape was indeed the same person in the photo.

52. Investigators further monitored the location data of cellular telephone (414) 326-6333 and noted that at approximately 12:23 p.m. (Central Standard Time) location data showed that device in the area of PALMA JIMENEZ's residence (3607 W. Bratling Lane, Milwaukee, WI), with a radius of approximately 182 meters. At 12:53 p.m., the location data of cellular telephone (414) 326-6333 showed it traveling north in the area of North 16th Street towards the direction of autobody shop, with a radius of approximately 1,411 meters. At 1:38 p.m., the location data of cellular telephone (414) 326-

6333 showed it in the area of the autobody shop (3901 W. Rohr Avenue), with a radius of approximately 331 meters.

53.     Based on the location information for cellular telephone (414) 326-6333, which demonstrated it was traveling in the direction of the autobody shop, case agents responded to the autobody shop to conduct physical surveillance. Case agents also conducted electronic surveillance at this time.

54.     At 1:29 p.m., case agents observed Subject Vehicle 2 pull next to the Ford Escape. A Hispanic male known to case agents as "Allen" exited the driver side of Subject Vehicle 2, walked up to the gate, unlocked the gate with a key, and opened the gate, allowing the Ford Escape, a 2000 Ford E350 Super Duty Van Truck with Wisconsin registration plate XD62748, and a White Nissan Murano (no registration plates) enter the gated lot.

55.     At 2:17 p.m., investigators observed Mohammed TOURE drive up to the south gate in the Ford Escape. TOURE exited the vehicle, walked up to the gate, opened the gate, entered his vehicle, and pulled out of the gated lot with the Ford E350 Super Duty Van Truck driving behind him. TOURE exited the FORD Escape and an unidentified black male exited the passenger side of the Ford E350 Super Duty Van Truck. TOURE and an unidentified black male walked up to the gate, closed the gate, and locked it. Both subjects returned to their vehicles and drove off.

56.     At 8:25 p.m., PALMA JIMENEZ was observed on electronic surveillance walking up to the south gate. PALMA JIMENEZ opened the gate, allowing Subject

Vehicle 2 to pull out of the gated lot. PALMA JIMENEZ locked the gates and entered the passenger side of Subject Vehicle 2. Subject Vehicle 2 then drove off.

57.     Based on their training, experience, and familiarity with this investigation, case agents believe that this activity is consistent with PALMA JIMENEZ receiving narcotics at his autobody shop.

58.     On November 14, 2023, CI-1 placed a recorded call to (414) 326-6333, used by PALMA JIMENEZ. During the recorded call, CI-1 asked Fernando PALMA JIMENEZ if he had any for the nose, meaning cocaine. PALMA JIMENEZ replied that he did not have any. CI-1 told PALMA JIMENEZ that "his buddy" wants a whole one (kilogram of cocaine) and would he (PALMA JIMENEZ) be able to get it. PALMA JIMENEZ replied he would not know how much (meaning he did not know the price for the kilogram). CI-1 then told PALMA JIMENEZ that "they" want to get 100 grams, meaning 100 grams of heroin. PALMA JIMENEZ responded "ok." PALMA JIMENEZ agreed to let the CI-1 know when the cocaine was available and the price for the cocaine.

59.     CI-1 has informed case agents that he/she was aware that PALMA JIMENEZ was instructed to get rid of his phone and get another phone after the June 2023 arrest were made. Upon examination of call records (total incoming/outgoing calls) on PALMA JIMENEZ' known telephone number of (414) 326-6333, investigators have noticed a decrease in telephone activity during the month of November.

60.     Based on their training and experience, case agents know that narcotics traffickers often use multiple cellular telephones to compartmentalize their trafficking activities and/or to evade detection by law enforcement officers. Although PALMA

JIMENEZ still uses (414) 326-6333, case agents suspect, based on their training and experience, phone records, and CI-1's information, that PALMA JIMENEZ uses another unidentified cellular device (**Target Cellular Device**) to communicate with foreign co-conspirators, based out of Sinaloa, Mexico. Identification of a secondary cellular device will assist investigators in identifying other co-conspirators involved in the illegal distribution of cocaine and fentanyl from Mexico, to the United States and elsewhere.

## MANNER OF EXECUTION

58.    In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

59.    To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the **Target Cellular Device**, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers.  The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others.  Law enforcement will use this investigative device when they have reason to believe that Fernando PALMA JIMENEZ is present.  Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the **Target Cellular Device** when the subject is in multiple locations

and/or multiple times at a common location and use this information to identify the **Target Cellular Device**, as only the **Target Cellular Device**'s unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the **Target Cellular Device**, they will cease using the investigative technique. Because there is probable cause to determine the identity of the **Target Cellular Device**, there is probable cause to use the investigative technique described by the warrant to determine the identity of the **Target Cellular Device**.

60. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the **Target Cellular Device**, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the **Target Cellular Device** from all other devices.

## AUTHORIZATION REQUEST

61. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

62. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days from the end of the period of authorized surveillance. This

delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

63. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

64. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Todd Higgins
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
by telephone on _____12/1/23_____:

UNITED STATES MAGISTRATE JUDGE
STEPHEN C. DRIES

## <u>ATTACHMENT A</u>

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Fernando PALMA JIMENEZ is present at certain locations, including, but not limited to:

3901 W. Rohr Avenue, Milwaukee, WI

3607 W. Bratling Lane, Milwaukee, WI

**ATTACHMENT B**

The "Target Cellular Device" is the cellular device or devices carried by Fernando PALMA JIMENEZ. Pursuant to an investigation of Fernando PALMA JIMENEZ for violations of Title 21, United States Code, Sections 841(a)(1) and 846, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).